CHARLES HEEPKE, Plaintiff-Appellant, v. HEEPKE FARMS, INC., Defendant-Appellee.

Fifth District    No. 5—94—0538

Opinion filed April 21, 1995.

Harry J. Sterling, P.C., of Fairview Heights, for appellant.

Stephen C. Mudge and Michael J. Bedesky, both of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellee.

PRESIDING JUSTICE MAAG delivered the opinion of the court:

Plaintiff, Charles Heepke, appeals from a Madison County circuit court order dismissing his amended complaint with prejudice.

Plaintiff filed this action against defendant, Heepke Farms, Inc., on January 31, 1994, seeking recovery for personal injuries he sustained in a farm truck accident on February 21, 1992. On March 14, 1994, defendant filed a motion to dismiss plaintiff's complaint, asserting that the fellow servant doctrine precluded plaintiff from imputing his co-worker's negligence to their common employer under

a theory of *respondeat superior*. The trial court granted defendant's motion on April 8, 1994. The court specifically found that plaintiff and the allegedly negligent co-worker were "members of the same department" and that the fellow servant rule therefore applied.

Plaintiff filed an amended complaint on April 25, 1994. Defendant again filed a motion to dismiss, asserting the fellow servant doctrine as a defense. The trial court granted defendant's motion on August 5, 1994, and dismissed plaintiff's complaint with prejudice. Plaintiff appeals from this order.

A trial court should dismiss a cause of action on the pleadings only if it is apparent that no set of facts can be proven which will entitle plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654.) When considering a motion to dismiss at the pleading stage, all well-pleaded facts must be assumed to be true. *Burdinie*, 139 Ill. 2d at 505, 565 N.E.2d at 657.

Defendant, Heepke Farms, Inc., is a duly authorized corporation engaged in the business of farming in the State of Illinois. The defendant has three corporate officers: Mark A. Heepke, president; Fred W. Heepke, vice-president and treasurer; and Charles F. Heepke (plaintiff), secretary.

On February 21, 1992, plaintiff was working as a manual laborer for the defendant. Plaintiff was riding in the rear of a farm truck loaded with hogs. The truck was owned by defendant and being operated by Fred Heepke. Plaintiff's job was to raise the truck's gate and release the hogs after Fred had backed the truck up against an unloading ramp. Plaintiff alleges that Fred improperly and negligently backed the truck up, thereby causing plaintiff to fall from the truck and suffer personal injury. Plaintiff alleges that both he and Fred were working as employees of the defendant at the time of the accident. The complaint was based on the theory of *respondeat superior*. It alleged that Fred was acting in the scope of his employment as a truck driver when the accident occurred and that his alleged negligence should be imputed to the corporate defendant.

Plaintiff cannot maintain a workers' compensation claim because defendant had withdrawn from workers' compensation coverage for its corporate officers under section 3 of the Illinois Workers' Compensation Act. (820 ILCS 305/3 (West 1992).) Each corporate officer, including plaintiff, signed the form electing to withdraw from coverage.

Plaintiff's only contention on appeal is that the trial court erred in applying the fellow servant rule to dismiss his amended complaint. Plaintiff makes two arguments in support of his position. He first argues that the fellow servant rule is an antiquated doctrine

which has been rendered impotent since Illinois adopted the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)). Plaintiff urges us to take this opportunity to abolish the rule once and for all.

■ Defendant argues that we do not have the authority to abolish the fellow servant doctrine. We agree. The Illinois Supreme Court first announced the rule that would become known as the fellow servant rule in *Honner v. Illinois Central R.R. Co.* (1854), 15 Ill. 550. In *Honner*, the court stated that a master is not liable to one servant for the carelessness of another servant where both servants are engaged in the master's business. (*Honner*, 15 Ill. at 552.) The supreme court adopted the rule after fully discussing the policy behind the doctrine and reviewing the case authorities to date. (*Chicago & Northwestern R.R. Co. v. Moranda* (1879), 93 Ill. 302.) Illinois has never abolished the fellow servant rule, either by statute or court ruling. In fact, the rule has recently been treated as viable by Illinois courts in *Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 285 N.E.2d 619, and by the United States Court of Appeals in *Pomer v. Schoolman* (7th Cir. 1989), 875 F.2d 1262.

Once our supreme court has declared the law on a point, it alone can overrule or modify its previous opinion. (*People v. Pruitt* (1992), 239 Ill. App. 3d 200, 606 N.E.2d 866; *Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 388 N.E.2d 906.) It is not within our authority to overrule or modify decisions of our supreme court. (*Pruitt*, 239 Ill. App. 3d at 209, 606 N.E.2d at 872.) We, therefore, decline plaintiff's invitation to abolish 141 years of Illinois law.

Plaintiff next argues that the fellow servant rule should be narrowly construed to allow a jury to determine whether plaintiff and his coemployee were in the "same department." Plaintiff asserts that the policy behind the fellow servant rule, that fellow servants have a duty to monitor each other's safety, is frustrated by the modern world of specialized job descriptions. Therefore, plaintiff argues, application of the fellow servant doctrine defense should be an issue for the fact finder.

Defendant contends that the issue of whether a defendant owed plaintiff a duty of care is a question of law to be determined by the trial judge. Defendant claims that application of the fellow servant rule is an affirmative matter which avoids the legal effect of or negates the alleged cause of action. (735 ILCS 5/2—619(a)(9) (West 1992).) Defendant argues that a motion to dismiss based on affirmative matter is analogous to a motion for summary judgment. As such, defendant argues that it was the trial court's function to determine whether or not the fellow servant rule barred plaintiff's claim as a matter of law.

In applying the fellow servant rule, the question of whether two persons, both servants of a common master, are fellow servants is a mixed question of law and fact. (*Bennett v. Chicago City Ry. Co.* (1909), 243 Ill. 420, 428, 90 N.E. 735, 737.) Fellow servants are defined as those who are directly cooperating with each other in a particular task at the time of the injury, or those whose usual duties are such as to bring them into habitual association. Thus, the safety of each depends upon the care with which the other performs his appropriate duty, and their duties thereby afford each the power and opportunity to exercise mutual influence promotive of caution and to give notice of any neglect of duty to the common master. (*Bennett*, 243 Ill. at 428, 90 N.E. at 737; *Indianapolis & St. Louis R.R. Co. v. Morgenstern* (1883), 106 Ill. 216.) The definition of fellow servant is a question of law. (*Bennett*, 243 Ill. at 428, 90 N.E. at 737.) The question of whether a given case falls within that definition is usually a question of fact to be determined by the jury from the evidence. (*Morgenstern*, 106 Ill. at 220; *Bennett*, 243 Ill. at 428, 90 N.E. at 737.) "It [is] for the court, by proper instructions, to explain and define the relation of fellow servants, so far as it is capable of legal definition, and for the jury, in considering the evidence, to determine whether the relation as thus defined, in fact existed." *Lake Erie & Western R.R. Co. v. Middleton* (1892), 142 Ill. 550, 556, 32 N.E. 453, 454-55.

A proper inquiry before the jury should raise the issues of whether the two persons were in the service of a common master; whether they were engaged in the same line of employment; and whether the existing relations between them were of such a character, and their duties such, as to bring them together, cooperating in a particular task. (*Morgenstern*, 106 Ill. at 220.) This question of fact only becomes a question of law when there is no dispute with reference to the facts, and the evidence, with all legitimate inferences drawn therefrom, is such that all reasonable and intelligent persons must reach the same conclusion. *Bennett*, 243 Ill. at 428, 90 N.E. at 737.

■ This is simply not the case here. Plaintiff and defendant dispute the facts which, when applied, would define plaintiff and Fred Heepke as fellow servants. Plaintiff alleges that his job duty was only to open the truck gate and release the hogs. He alleges that Fred's duty was to operate the truck. Plaintiff argues that these two duties were not so related that a jury could find the two men to be "directly co-operating with each other in a particular work." Plaintiff further argues that the policy rationale behind the fellow servant doctrine was frustrated because the two men, each at the opposite end of the truck, could not monitor the other or caution the other for safety. Finally, plaintiff argues that their usual duties did not bring

them into habitual association such that their safety would depend on each other. Defendant disagrees.

Whether the inferences to be drawn from the evidence lead to an avoidance of the fellow servant rule is not a matter for us to determine. Assuming the truth of plaintiff's well-pleaded facts (*Burdinie*, 139 Ill. 2d at 505, 565 N.E.2d at 657), we find that the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief could be granted and the issue of the fellow servant doctrine should be presented to the jury as a question of fact.

Defendant makes one final argument in support of the trial court's dismissal of plaintiff's amended complaint. Defendant contends that plaintiff's theory of liability against defendant, which is based solely on the doctrine of *respondeat superior*, is inadequate as a matter of law. Defendant argues that both plaintiff and the alleged tortfeasor, Fred Heepke, are corporate executives of the same corporation and, therefore, are both "masters" and not employees. Since both men are masters and neither is an employee, defendant argues that there is no master-servant relationship upon which plaintiff can rest the doctrine of *respondeat superior* to impute Fred's negligence to the defendant corporation.

A reviewing court is not bound by reasons given by the trial court for its judgment, and a lower court judgment may be affirmed upon any ground warranted in the record regardless of whether it was relied on by the trial court. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9.) A reviewing court may affirm a dismissal of a complaint on any grounds which are supported by the record, regardless of whether or not the trial court relied on those grounds or whether the trial court's reasoning was correct. *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 527 N.E.2d 303.

■ In the instant case, however, defendant has not presented us with a tenable argument to affirm the dismissal. In essence, defendant is arguing that because plaintiff and Fred Heepke are officers of the defendant corporation, they cannot also be employees of the corporation. This issue is not new to Illinois courts but has arisen in a number of cases under Illinois workers' compensation law.

Whether a corporate officer is entitled to recover compensation under workers' compensation depends on whether he can prove that his injury was received while engaged in employment as an employee of the company and not in performance of the duties appertaining to his official capacity as an executive officer. (*B.W. Sales Co. v. Industrial Comm'n* (1966), 35 Ill. 2d 418, 422, 220 N.E.2d 405, 407.) In *B.W. Sales Co.*, the court held that at the time of his injury, the

claimant was performing in a capacity as a travelling salesman and not as an executive officer of the company. His injuries received in an automobile accident, therefore, were compensable. (*B. W. Sales Co.*, 35 Ill. 2d at 424, 220 N.E.2d at 408.) This rule of law is known as the dual-capacity doctrine. *B. W. Sales Co.*, 35 Ill. 2d at 420, 220 N.E.2d at 407.

Under this doctrine, an officer, director, or stockholder of a corporation will not be denied compensation merely because he is an officer, director, or stockholder, if, as a matter of fact, at the time of his injury he is engaged in manual labor or the ordinary duties of a workman and receives pay in the capacity of an employee, or if he is engaged in employment palpably separate and distinct from the official duties falling upon him as an officer of the corporation. (*Stevens v. Industrial Comm'n* (1931), 346 Ill. 495, 498, 179 N.E. 102, 104.) The *Stevens* court concluded that a secretary and treasurer of a corporation, in which he owned 48% of the stock, was acting as an employee in going to a debtor's place of business to collect an account and was, therefore, entitled to compensation for an injury occurring on the trip. *Stevens*, 346 Ill. at 498, 179 N.E. at 104.

Plaintiff could be entitled to compensation under the dual-capacity doctrine for his injury received while employed as a manual laborer if the defendant company had not elected to withdraw from workers' compensation coverage. The question then becomes, Does the defendant's withdrawal from workers' compensation coverage foreclose plaintiff's right to a remedy at law? We find that it does not.

In conclusion, under the dual-capacity doctrine, plaintiff may seek recovery for his injury because he alleges that he was injured in his capacity as an employee and not in his capacity as a corporate officer. Moreover, plaintiff may employ the doctrine of *respondeat superior* against defendant because plaintiff claims that the alleged tortfeasor, Fred Heepke, was acting as an employee of the corporation while driving the truck, and not in his official corporate executive capacity.

For the foregoing reasons, the order of the circuit court dismissing plaintiff's amended complaint is reversed, and plaintiff's cause of action is remanded for further proceedings not inconsistent with this decision.

Reversed and remanded.

CHAPMAN, J., concurs.

JUSTICE LEWIS, dissenting:
I find myself reluctantly dissenting respectfully from my col-

leagues. The facts in this case as to the relationship between the plaintiff and his co-worker, the driver of the truck, are not disputed. Given the facts in this case, we do not need a jury to tell us what is really a matter of law.

The majority points out that "[f]ellow servants are defined as those who are directly cooperating with each other in a particular task at the time of the injury." (271 Ill. App. 3d at 939.) Plaintiff and defendant's truck driver had a particular task, the task of delivering hogs. In fact, the even more particular task at the moment of the injury was the unloading of the hogs.

Were plaintiff and defendant's truck driver cooperating? The majority points out that "[p]laintiff's job was to raise the truck's gate and release the hogs after Fred had backed the truck up against an unloading ramp." (271 Ill. App. 3d at 937.) Plaintiff could not do his job without Fred backing the truck up to the unloading ramp, and Fred could not complete his job of delivering the hogs without plaintiff raising the truck's gate and releasing the hogs. What more cooperation could you have? Plaintiff could not help Fred drive the truck, and apparently, Fred did not need to assist plaintiff with raising the gate.

If this case is not a classic example of fellow servants, then there isn't such a thing. If three workers were given the task of digging a hole, surely the courts would not require that all the workers have hold of the same shovel before we would find as a matter of law that the workers were fellow servants. It may be one person's duty to shovel the dirt into a bucket, another person's duty to raise the bucket up to ground level, and a third person's duty to empty and return the bucket. "[A]ll reasonable and intelligent persons must reach the same conclusion," according to the majority, before we can say as a matter of law that the workers were fellow servants. (271 Ill. App. 3d at 939.) Surely, there should be no doubt that the workers digging the hole were fellow servants, nor should there be any doubt that if two persons deliver the same hogs, at the same time, at the same place, for the same employer, and using the same truck, they are fellow servants as a matter of law.

Finally, if you read the cases cited by the majority, in which the supreme court decided that facts presented a question for the jury, it is easily discernible that the workers involved had different jobs with different goals and purposes and were using entirely different equipment. See *Bennett v. Chicago City Ry. Co.* (1909), 243 Ill. 420, 90 N.E. 735; *Indianapolis & St. Louis R.R. Co. v. Morgenstern* (1883), 106 Ill. 216.

Plaintiff and the other corporate officers sought to avoid the cost of workers' compensation insurance while they engaged in a very

hazardous job, farming. While we may sympathize with plaintiff, we cannot let our sympathies cause a windfall for the plaintiff, an increase in liability for corporations, and an increase in insurance premiums to all Illinois corporations for general liability policies. Corporations and insurance companies should not be saddled with unanticipated increased risks of coverage for corporate officers injured while performing ordinary labor for the corporation. You have to pay for what you get.